UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAMON STACK** | **CIVIL ACTION** |
| **VERSUS** | **NO. 02-1417** |
| **BURL CAIN, WARDEN, LSP** | **SECTION "S" (6)** |

### REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.

Upon review of the entire record, the Magistrate Judge has determined that this matter can be disposed of without an evidentiary hearing. For the reasons which follow, the Magistrate Judge issues this Report and Recommendation in accordance with the applicable law, hereby recommending that the instant application for federal *habeas corpus* relief be **DENIED WITH PREJUDICE as UNTIMELY.**

## PROCEDURAL HISTORY

Petitioner, Damon Stack, is a state prisoner incarcerated in the Louisiana State Penitentiary at Angola, Louisiana. On April 21, 1994, the State of Louisiana filed a bill of information charging petitioner with attempted first degree murder, in violation of La. Rev. Stat. Ann. § 14:27 and § 14:30, and with armed robbery, in violation of La. Rev. Stat. Ann. § 14:64.[1] Petitioner proceeded to trial on August 16, 1994[2] and was convicted by a jury of attempted first degree murder and attempted armed robbery on August 17, 1994.[3] On October 11, 1994, the trial court sentenced petitioner to serve fifty (50) years at hard labor for the attempted first degree murder conviction and forty-nine and one-half (49 ½) years at hard labor for the attempted armed robbery conviction; the sentences were ordered to run consecutively.[4] The state filed a multiple offender bill on the same

---

[1] *See* State Rec. Vol. 1 of 4 or Vol. 2 of 4 for a copy of the Bill of Information dated April 21, 1994.

[2] *See* State Rec. Vol. 2 of 4, Transcript of Proceedings dated August 16, 1994, No. 94-920, pp. 4-29; State Rec. Vol. 1 of 4, Minute Entry No. 4 dated August 16, 1994; State Rec. Vol. 2 of 4, Minute Entry No. 4 dated August 16, 1994.

[3] *See* State Rec. Vol. 1 of 4, Verdict Form and Responsive Verdict Form dated August 17, 1994; State Rec. Vol. 2 of 4, Verdict Form and Responsive Verdict Form dated August 17, 1994; State Rec. Vol. 3 of 4, Transcript of Proceedings dated August 17, 1994, pp. 177-80; State Rec. Vol. 1 of 4, Minute Entry No. 5 dated August 17, 1994; State Rec. Vol. 2 of 4, Minute Entry No. 5 dated August 17, 1994. The Responsive Verdict Form indicates that eleven jurors found petitioner guilty of attempted first degree murder and that ten jurors found petitioner guilty of attempted armed robbery. Louisiana law requires that at least ten jurors concur in a verdict in which confinement at hard labor is the resulting punishment. *See* La. Const. Art. I, § 17(A); La. Code Crim. Proc. Ann. art. 782(A).

[4] *See* State Rec. Vol. 3 of 4, Transcript of Sentencing Proceedings dated October 11, 1994, No. 94-2420, p. 13; State Rec. Vol. 1 of 4, Minute Entry No. 6 dated October 11, 1994.

day, averring that petitioner ought to be sentenced as a multiple offender in accordance with La. Rev. Stat. 15:529.1.[5] On November 10, 1994, the trial court found petitioner to be a multiple offender and vacated the sentence previously imposed for the attempted murder conviction and re-sentenced petitioner to one hundred (100) years at hard labor with credit for time served.[6]

Petitioner pursued a direct appeal,[7] and on July 25, 1995, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction and sentence for attempted first degree murder but vacated and set aside petitioner's sentence and conviction for attempted armed robbery.[8] Petitioner did not seek further direct review of the appellate court's decision with the Louisiana Supreme

---

[5] *See* State Rec. Vol. 1 of 4, Multiple Offender Bill dated October 11, 1994; State Rec. Vol. 2 of 4, Multiple Offender Bill dated October 11, 1994. The bill alleged that petitioner had previously pled guilty as charged to distribution of cocaine, in violation of La. Rev. Stat. Ann. § 40:967.

[6] *See* State Rec. Vol. 3 of 4, Transcript of Proceedings dated November 10, 1994, pp. 10, 11-13; State Rec. Vol. 1 of 4, Second Offender Commitment Form dated November 10, 1994; State Rec. Vol. 2 of 4, Second Offender Commitment Form dated November 10, 1994; State Rec. Vol. 1 of 4, Reasons for Judgment dated November 15, 1994; State Rec. Vol. 2 of 4, Reasons for Judgment dated November 15, 1994 (in which state trial Judge Kernan Hand noted that petitioner's testimony at trial regarding his prior conviction meant that the state did not have to prove that petitioner's identity was one in the same with the person previously convicted and petitioner's guilty plea to that prior crime was entered knowingly, intelligently, and voluntarily). *See also* State Rec. Vol. 1 of 4, Transcript of Plea and Sentencing dated March 16, 1993, No. 92-5712, pp. 2-12 (in which petitioner pled guilty to and was sentenced for possession and distribution of cocaine).

[7] *See* State Rec. Vol. 3 of 4, Original Brief on Behalf of Damon Stack, No. 95-KA-213.

[8] *See* State Rec. Vol. 1 of 4, *State v. Stack*, 659 So.2d 853, 855-56 (La. App. 5 Cir. 1995). Petitioner's conviction for attempted armed robbery was set aside on the grounds that the Constitution's double jeopardy prohibition barred petitioner's conviction for both attempted armed robbery and attempted first degree murder where the felony of attempted armed robbery is the "underlying felony" of the attempted murder conviction. *Id*. at 855. On July 16, 1996, the trial court issued an order vacating and setting aside petitioner's conviction in accordance with the appellate court's ruling. *See* State Rec. Vol. 1 of 4, Order of Judge Kernan Hand dated July 16, 1996.

Court. On July 8, 1996, petitioner filed an application for a writ of mandamus[9] in the Louisiana Fifth Circuit Court of Appeal, which was denied by that court on August 7, 1996.[10] Then, on January 21, 1997, petitioner filed another application for a writ of mandamus,[11] which the Louisiana Fifth Circuit Court of Appeal denied on January 27, 1997.[12] On or about May 29, 1998, petitioner filed an application for post-conviction relief with the state trial court, raising three claims.[13] In an order dated September 11, 1998, the trial court denied petitioner's first claim and part of his third claim and ordered him to file written reasons as to why he failed to present his remaining claims on direct appeal.[14] Petitioner subsequently filed a response,[15] and on February 12, 1999, the trial court

---

[9] *See* Fed. Rec. Doc. 5, Order dated March 23, 2006, *State v. Stack*, No. 96-KH-573, Application for Writs to the Court of Appeal, Fifth Circuit dated July 8, 1996. Petitioner's application was not originally contained within the state court record. At this court's request, respondent submitted a copy of the application.

[10] *See* State Rec. Vol. 1 of 4, *State v. Stack*, No. 96-KH-573 (La. App. 5th Cir 1996). The court denied the writ on August 7, 1996 because the trial court's order of July 16, 1996 vacating and setting aside petitioner's conviction and sentence of attempted armed robbery satisfied the court's previous disposition of petitioner's case on direct appeal.

[11] *See* Fed. Rec. Doc. 5, Order dated March 23, 2006, *State ex rel. Stack v. Cain*, No. 97-KH-56, Application for Writs to the Court of Appeal, Fifth Circuit dated January 21, 1997. This writ application was also not originally contained within the state court record. At this court's request, respondent submitted a copy of the application.

[12] *See* State Rec. Vol. 1 of 4, *State ex rel. Stack v. Cain*, No. 97-KH-56 (La. App. 5th Cir. 1997). The state appellate court denied the writ as premature on January 27, 1997.

[13] *See* State Rec. Vol. 1 of 4, Post-Conviction Relief Application Concerning the Decision of the Honorable Kernan A. Hand, signed and dated May 5, 1998.

[14] *See* State Rec. Vol. 1 of 4, Order of the Twenty-Fourth Judicial District Court dated September 11, 1998.

[15] *See* State Rec. Vol. 1 of 4, Response to Court's Order signed September 23, 1998.

issued an order denying post-conviction relief.[16] Petitioner then filed a motion for reconsideration of his post-conviction application, which the trial court denied on March 29, 1999.[17] On March 14, 2001, petitioner sought review of the trial court's rulings of September 11, 1998 and February 12, 1999.[18] On March 19, 2001, the Louisiana Fifth Circuit Court of Appeal denied relief.[19] On May 15, 2001, petitioner filed an application for a writ of certiorari with the Louisiana Supreme Court.[20] The high court denied petitioner's application on February 1, 2002.[21] Petitioner, acting *pro se*, filed the instant federal action under 28 U.S.C. § 2254 for *habeas corpus* relief on May 2, 2002.[22]

---

[16] *See* State Rec. Vol. 1 of 4, Order of the Twenty-Fourth Judicial District Court dated February 12, 1999.

[17] *See* State Rec. Vol. 1 of 4, Motion for Reconsideration, No. 94-2420 dated March 21, 1999. The words "March 29, 1999 Request for Reconsideration DENIED" are hand-written at the bottom of the application.

[18] *See* State Rec. Vol. 1 of 4, *State ex rel. Stack v. Cain*, No. 01-KH-284 (La. App. 5 Cir. 2001)

[19] *See id.*

[20] *See* State Rec. Vol. 3 of 4, *State ex rel. Stack v. Cain*, No. 01-KH 1409, Application for Writ of Certiorari.

[21] *See* State Rec. Vol. 1 of 4, *State ex rel. Stack v. Cain*, No. 2001-KH-1409 (La. 2002); State Rec. Vol. 3 of 4, *State ex rel. Stack v. Cain*, No. 2001-KH-1409 (La. 2002).

[22] *See* Fed. Rec. Doc. 1, Petition Under 28 U.S.C. § 2254 For Writ of Habeas Corpus By A Person in State Custody (hereinafter "petition") signed May 2, 2002. Both petitioner's § 2254 application and supporting memorandum of law were signed May 2, 2002. The mailing envelope containing petitioner's entire application was postmarked on May 3, 2002, but the application was not stamp dated by the Clerk of this court until January 20, 2005, when petitioner paid the five dollar ($5.00) filing fee. This Magistrate Judge had previously denied petitioner the ability to proceed *in forma pauperis* and had ordered, on May 13, 2002, that he pay the filing fee. *See* Fed. Rec., Order dated May 13, 2002.
In the case of a prisoner, like the petitioner, who proceeds *pro se*, "a habeas corpus petition should be deemed filed when the petition is handed over to prison authorities for mailing." *Spotville*

Petitioner's application contains three main claims for relief. First, petitioner claims that the trial court denied him effective assistance of counsel in violation of the Sixth and Fourteenth

---

*v. Cain*, 149 F.3d 374, 376 (5th Cir 1998). *See also* Rule 3(d) of the Rules Governing Section 2254 Cases ("A paper filed by an inmate confined in an institution is timely if deposited in the institution's internal mailing system on or before the last day for filing."). Applying the so called "mailbox rule" established by the Supreme Court in *Houston v. Lack*, 487 U.S. 266, 271-72, 275-76 (1988), the *Spotville* court held that the date upon which a *pro se* petitioner "tenders" his petition to prison authorities, and *not* the date upon which he ultimately pays the required filing fee subsequent to a denial of *in forma pauperis* status, constitutes the filing date of a petition for *habeas corpus* relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 149 F.3d at 378.

Although the exact date upon which petitioner handed over his petition to prison authorities is unknown, the: 1) proximity of the signing date of May 2, 2002 to the postmark date of May 3, 2002, 2) respondent's admission that petitioner appears to have presented his application to prison authorities for mailing "on or about May 2, 2002" and 3) supporting jurisprudence on the issue from the Eastern District of Louisiana leads this court to conclude that petitioner "tendered" his application on May 2, 2002. *See* Fed. Rec. Doc. 3, Response to Habeas Petition stamp dated February 11, 2005, p. 5. *See also Colarte v. LeBlanc*, 40 F. Supp.2d 816, 817 (E.D. La. 1999) (assuming that petitioner turned over his habeas application to prison officials for delivery to this court on the date he signed the application); *Magee v. Cain*, No. Civ. A. 99-3867, 2000 WL 1023423, at * 4 n.2 (E.D. La. July 14, 2000) (adopting the approach of the Southern District of Georgia in inferring that the date upon which a petitioner signed a motion under 28 U.S.C. § 2255 was the date upon which he deposited the motion with prison officials and applying that approach to petitions filed under 28 U.S.C. § 2254); *Punch v. State*, No. Civ. A. 98-2867, 1999 WL 56279, * 2 n.3 (E.D. La. July 29, 1999) (stating that it may be "reasonably inferred" that a prisoner delivered his petition to prison authorities on the date on which he signed it). As such, the instant petition was filed, for purposes of the AEDPA, on May 2, 2002.

As an added note, it would appear unreasonable that petitioner waited nearly three years to pay the $ 5.00 filing fee. Such a lengthy delay without any showing that petitioner remained a pauper for the entire three-year period seemingly undercuts the policy of expediting the federal habeas process, which is the foundation of 28 U.S.C. § 2244(d). However, the court recognizes that the State made no such argument to this court, and that the United States Court of Appeals for the Fifth Circuit has not had the opportunity to determine whether cases like petitioner's are distinguishable from *Spotville*.

Amendments.[23]  Petitioner's second claim *appears* to contain three distinct sub-parts, each relating to his right under the Fifth Amendment to be free from compelled self-incriminating testimony:[24] 1) First, he claims that the trial court violated his Fifth Amendment right to be free from self-incrimination by failing to inform petitioner of his right to remain silent at trial;  2) second, he claims that his trial attorney failed to inform him that his statements at trial concerning a prior conviction could be used against him in a subsequent multiple offender proceeding; and, 3) third, he claims that his attorney's and the trial court's failure to inform him that his trial testimony regarding the prior conviction could be used against him in a subsequent multiple offender proceeding rendered the multiple offender proceeding structurally defective. [25] Petitioner's third claim is  that both his trial and appellate counsel rendered ineffective assistance of counsel,  in violation of the Sixth and Fourteenth Amendments.[26]  The State filed a response, asserting that although petitioner appears to have exhausted his available remedies by presenting all three claims to the Louisiana Supreme Court, the instant federal application should be dismissed as untimely because petitioner failed to file the application within the applicable time frame mandated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[27]

---

[23] *See* Fed. Rec. Doc. 1, Petition, pp. 11, 12-18.

[24] *See id.*, pp. 11, 18-22.

[25] *Id.*, p. 21.

[26] *See id.*, pp. 12, 22-29.

[27] *See* Fed. Rec. Doc. 3, Response to Habeas Petition stamp dated February 11, 2005, pp. 7-9.

**TIMELINESS**

Under the AEDPA, a petitioner seeking federal *habeas corpus* relief is subject to a one-year statute of limitations governing the time within which he may file a petition under 28 U.S.C. § 2254. 28 U.S.C. § 2244(d)(1).[28] The one-year period commences from "*the latest of* the date on which the judgment became final by the conclusion of direct review *or* the expiration of the time for seeking such review." §2244 d(1)(A) (emphasis added). This provision provides two "alternate methods" by which a conviction may become "final" for purposes of the AEDPA: "direct review can end or the time to pursue direct review can expire." *Foreman v. Dretke*, 383 F.3d 336, 338 (5th Cir. 2004). Where a petitioner's conviction has become "final" by one of these methods prior to the AEDPA's effective date of April 24, 1996, he is afforded a one-year grace period ending on April 24, 1997 within which to file timely a federal petition for *habeas corpus* relief under 28 U.S.C. § 2244(d). *See Flanagan v. Johnson*, 154 F.3d 196, 199-201 & n.2 (5th Cir. 1998) ; *United States v. Flores*, 135 F.3d 1000, 1002-05 (5th Cir. 1998).

When a "properly filed" application for post conviction or other collateral review is pending, the limitation period is tolled. § 2244d(2) ("The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."). Accordingly, a federal court considering a § 2254 application for *habeas corpus* relief must extend petitioner's filing deadline by the number of days during which his "properly filed" post-conviction application

---

[28] The AEDPA governs the disposition of petitioner's application, as it was filed after AEDPA's enactment date of April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320, 336-37 (1997); Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996).

were pending in the state courts. *See Fields v. Johnson*, 159 F.3d 914, 916 (5th Cir. 1998) (extending petitioner's AEDPA limitations period by the ninety-one days during which his state post-conviction proceeding was pending). This court, therefore, must extend petitioner's April 24, 1997 deadline by the number of days during which his state post-conviction application was pending in the state courts, as long as that application was a "properly filed" application for "[s]tate post-conviction or other collateral review with respect to the pertinent judgment or claim." § 2244d(2). Respondent contends that petitioner's instant application is untimely because petitioner's state-level filings during the one-year grace period did not constitute "properly filed" applications for post-conviction relief.[29] For the following reasons, the court agrees with respondent that the instant application was not timely filed.

In this case, petitioner's conviction became final under Louisiana law on August 8, 1995, fourteen (14) days after the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction and sentence in part on direct review. *See* La. Code Cr. Proc. art. 922(A)-(B).[30]  For purposes of

---

[29] *See* Fed. Rec. Doc. 3, Response to Habeas Petition stamp dated February 11, 2005, p. 7-9.

[30] La. Code Cr. Proc. art. 922, governing the finality of judgments on appeal, provides, in pertinent part that:

> A. Within fourteen days of rendition of the judgment of ... any appellate court ... a party may apply to the appropriate court for a rehearing ....
> B. A judgment rendered by ... [an] appellate court becomes final when the delay for applying for a rehearing has expired and no application therefor has been made.

After the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction and sentence in part on July 25, 1995, he had fourteen (14) days, or until August 8, 1995, to apply to that court for a rehearing. *See* La. Code Cr. Proc. art. 922(A). Petitioner failed to file for any such rehearing. Thus, the judgment of the appellate court became final under state law on August 8, 1995, when the delay for applying for a rehearing had expired and petitioner had not made an "application

2244(d)(1)(A), as amended by the AEDPA, petitioner's federal limitations period commenced to run on August 24, 1995, when the time for seeking direct review at the state level had expired. *See Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003).[31] Since petitioner's conviction and sentence became "final" prior to the effective date of the AEDPA, he was afforded the one-year grace period, or until April 24, 1997, to file the instant federal petition for *habeas corpus* relief. *See Flanagan*,

---

therefor." *Id.* § B.

[31] The *Roberts* court explained:

> The language of § 2244(d)(1)(A) provides that a decision becomes final "by the conclusion of direct review or the expiration of time for seeking such review." We previously held that direct review includes a petition for writ of certiorari to the Supreme Court. Therefore, "conclusion of direct review"is when the Supreme Court either rejects the petition for certiorari or rules on its merits. *If the conviction does not become final by the conclusion of direct review, it becomes final by "the expiration of the time for seeking such review."* We previously held that this includes the ninety days allowed for a petition to the Supreme Court following the entry of judgment by the state court of last resort. *If the [petitioner] stops the appeal process before that point, the conviction becomes final when the time for seeking further direct review in the state court expires.*

319 F.3d at 694 (emphasis added) (internal footnotes omitted).

Louisiana Supreme Court Rule X, § 5(a) provides that a defendant has thirty (30) days from the date of the "mailing of the notice of the original judgment of the court of appeal" to file an application seeking review of a judgment of the court of appeal. As noted, the Louisiana Fifth Circuit Court of Appeal affirmed petitioner's conviction and sentence in part on July 25, 1995. Petitioner then had "within thirty days of the mailing of the notice of the original judgment of the court of appeal" to make an application for review with the Louisiana Supreme Court. *See* La. Sup. Ct. R. X, § 5(a). Because petitioner failed to file such an application, he allowed the time for seeking direct review to expire. *See* 28 U.S.C. § 2244(d)(1)(A). The plain language of § 2244(d)(1)(A) establishes that petitioner's conviction became final when the time for seeking further direct review in the state court expires. *See Roberts*, 319 F.3d at 694. *See also McGee v. Cain*, 104 Fed.Appx 989, 990-91, 2004 WL 1683100, at *1 (5th Cir. 2004) (applying Louisiana Supreme Court Rule X, § 5(a) to determine the date on which petitioner's one-year statute of limitations commenced).

154 F.3d at 199-201 & n.2; *Flores*, 135 F.3d at 1002-05. Petitioner did not file the instant action until May 2, 2002, over five years after the expiration of the April 27, 1997 deadline.[32] Thus petitioner's application was untimely, unless his one-year grace period was interrupted pursuant to 28 U.S.C. § 2244(d)(2), which provides that "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitations under this subsection."

Between April 24, 1996 and April 27, 1997, petitioner filed two writ applications with the Louisiana Fifth Circuit Court of Appeal.[33] First, on July 8, 1996, he filed an application for a writ of mandamus directed at the trial court.[34] The appellate court denied the application on August 17, 1996, noting that the trial court had previously issued an order satisfying the state appellate court's instruction in its decision on direct appeal vacating petitioner's conviction and sentence in part.[35]

---

[32] *See* footnote 22 herein for an explanation of the filing date for the instant petition.

[33] *See* footnotes 9-12 herein and accompanying text.

[34] *See* Fed. Rec. Doc. 5, Order dated March 23, 2006, *State v. Stack*, No. 96-KH-573, Application for Writs to the Court of Appeal, Fifth Circuit dated July 8, 1996. *See also* Official Request from J. Peterson, Director of Central Staff to Jean Tiemann, Criminal Law Clerk, 24th Judicial District Court dated July 9, 1996 (explaining that petitioner had applied to the state appellate court for mandamus on the grounds that the district court had not acted on the appellate court's ruling of July 25, 1996, which vacated in part petitioner's convictions and sentences).

[35] The appellate court's decision states that the "trial court issued an order which satisfied this Court's instruction of July 25, 1996 [sic] in [petitioner's] appeal, No. 95-KA-213. Accordingly, this writ is denied." State Rec. Vol. 1 of 4, *State v. Stack*, No. 96-KH-573, Application for Writs to the Court of Appeal, Fifth Circuit dated July 8, 1996 (emphasis added). It appears as if the court's notation of the instruction date, July 25, 1996, is in error. The Louisiana Fifth Circuit Court of Appeal rendered a decision on appeal vacating in part petitioner's convictions and sentences on July 25, 1995. *See* State Rec. Vol. 1 of 4, *State v. Stack*, 659 So.2d 853, 855-56 (La. App. 5 Cir. 1995). In this July 25, 1995 decision, the appellate court vacated petitioner's conviction and sentence for

Second, on January 21, 1997, he filed another application for writ of mandamus directed at the trial court.[36] The appellate court denied this application on January 27, 1997.[37] In order for these applications to toll the AEDPA's one-year statute of limitations, they must constitute "properly filed" applications for "post-conviction or other collateral review" at the state level. *See* § 2244(d)(2).

In *Moore v. Cain*, the United States Court of Appeal for the Fifth Circuit held that applications seeking "other collateral review" must seek "review of the judgment pursuant to which the [petitioner] is incarcerated." 298 F.3d 361, 367 (5th Cir. 2002) (internal quotation marks omitted).[38] Petitioner Floyd J. Moore, a Louisiana prisoner convicted of armed robbery, filed an

---

attempted armed robbery and remanded the case back to the trial court for "further action consistent with this opinion." The trial judge, in an order dated July 16, 1996, complied with the appellate court's instruction. *See* State Rec. Vol. 1 of 4, Order of Judge Kernan Hand dated July 16, 1996.

[36] *See* State Rec., Vol. 1 of 4, *State ex rel. Stack v. Cain*, No. 97-KH-56, Application for Writs to the Court of Appeal, Fifth Circuit dated January 21, 1997.

[37] *See id.*

[38] The *Moore* Court explained:

In considering the language "post-conviction or other collateral", words which modify "review with respect to the pertinent judgment or claim", the Supreme Court has noted: "Incarceration pursuant to a criminal conviction may be by far the most common and most familiar basis for satisfaction of the 'in custody' requirement in § 2254 cases". Nevertheless, the Court recognized that "it is possible for 'other collateral review' to include review of a state court judgment that is not a criminal conviction." In further analyzing this language, the Court stated: "Congress may have also employed the construction "post-conviction or other collateral" in *recognition of the diverse terminology* that different States employ to represent the different forms of collateral review that are available after a conviction ....[W]ith this language, Congress meant to include within the scope of § 2244(d)(2) those "properly filed" applications, without respect to state nomenclature ... that, pursuant

application for writ of mandamus requesting that the trial court rule on his state-level habeas application. *See id.* at 362-63. After granting Moore a Certificate of Appealability (COA), the Fifth Circuit held that a pending mandamus application did not constitute "other collateral review" pursuant to § 2244(d)(2) so as to toll the AEDPA's one-year statute of limitations. *See id.* at 366-67.

Louisiana law provides that the purpose of the mandamus writ is that of compelling performance of a duty owed to a person requesting that duty. *See Sanders v. Wooldridge*, 729 So.2d 715, 717 (La. Ct. App. 1999), *cited in Moore*, 298 F.3d at 367. As an "extraordinary remedy," the writ is only to be used "sparingly to *compel action* that is clearly provided by law." *Id.* (emphasis in original).[39] Petitioner's mandamus application of July 8, 1996 was filed for the purpose of compelling the trial court to vacate and set aside petitioner's conviction and sentence for attempted armed robbery, pursuant to the decision of Louisiana Fifth Circuit Court of Appeal on July 25, 1995.[40] Like petitioner Moore, who attempted by mandamus writ to force the trial court to perform the act of ruling on his state habeas application, the petitioner in the instant action applied for mandamus to compel the trial court to comply with the ruling of the Louisiana Fifth Circuit Court

---

to the wording of § 2244(d)(2), seek "review" of the "pertinent judgment or claim."

298 F.3d at 366-67 (emphasis in original).

[39] La. C. C. P. art. 3861 defines a writ of mandamus as a "writ directing a public officer ... to perform any of the duties set forth in Article[] 3863." Article 3863 provides that the writ may be directed to a public officer "to compel the performance of a ministerial duty required by law." The mandamus writ is issuable "in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice." La. C. C. P. art. 3862.

[40] Petitioner's application consists of a typewritten letter requesting re-sentencing. *See* State Rec. Vol. 1 of 4, Writ Application No. 96-KH-573. The Louisiana Fifth Circuit Court of Appeal construed the letter as an application for a writ of mandamus. *See id.*

of Appeal and perform the act of ordering the vacation and setting aside of petitioner's conviction and sentence for attempted armed robbery. *See Moore*, 298 F.3d at 367. Thus, the petitioner in the instant action, like petitioner Moore, did not seek review of the judgment pursuant to which he is incarcerated by filing the mandamus action; he sought only a directive that the trial court make a ruling. *See id.* Accordingly, the mandamus petition of July 8, 1996 was not a "properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment" that operated to toll the one-year statute of limitations. § 2244d(2).

Furthermore, petitioner's mandamus application of January 21, 1997 sought to obtain relief against the Clerk of Court of Louisiana's Twenty-Fourth Judicial District Court regarding a request petitioner made for the cost of obtaining copies of transcripts of his trial.[41] Petitioner's application sought to compel the clerk to provide him with the prices associated with obtaining copies of these trial documents.[42] Petitioner's application was filed for the purpose of compelling the trial court clerk to perform certain actions (i.e., those of providing him with the prices associated with procuring copies of the requested documents. Such an application does not "seek review of the

---

[41] *See* Fed. Rec. Doc. 5, Order dated March 23, 2006, *State ex rel. Stack v. Cain*, No. 97-KH-56, Application for Writs to the Court of Appeal, Fifth Circuit dated January 21, 1997. In a November 15, 1996 request addressed to the Clerk of Court for the Twenty-Fourth Judicial District Court, petitioner asked the clerk for the cost of obtaining transcript copies for motions argued, the voir dire examination, all witness testimony, the closing arguments of counsel, and the jury instructions. *See* State Rec. Vol. 1 of 4, Letter from Petitioner to Clerk of Court Gegenheimer dated November 15, 1996. A February 13, 1997 letter from L. Wall, Office of District Judges, Twenty-Fourth Judicial District to the petitioner noted that clerks would be in contact with petitioner regarding the cost of such transcripts. *See* State Rec. Vol. 1 of 4, Letter from L.Wall, Law Library to Petitioner dated February 13, 1997.

[42] *See* Fed. Rec. Doc. 5, Order dated March 23, 2006, *State ex rel. Stack v. Cain*, No. 97-KH-56, Application for Writs to the Court of Appeal, Fifth Circuit dated January 21, 1997.

judgment" under which he is incarcerated, and as such, did not toll the limitations period. *Id*.[43] Accordingly, since petitioner's one year grace period was not interrupted by the filing of a "properly filed" application for "post conviction or other collateral review,"[44] his application became untimely when he failed to file by the April 24, 1997 deadline. *See Flanagan*, 154 F.3d at 199-201 & n.2; *Flores*, 135 F.3d at 1002-05. As such, petitioner's federal habeas petition is barred from review.[45]

---

[43] Respondent asserts that the application of January 21, 1997 does not toll the statute of limitations because the writ did not constitute a properly filed application for post-conviction review, since petitioner failed to first file the writ with the trial court. *See* La. Const. Art. 5, § 10(A) (providing that courts of appeal have appellate jurisdiction over all civil matters and all criminal cases triable by jury, except as provided in Art. 5. § 5(D)(2), and supervisory jurisdiction over cases arising within the circuit); La. Code Civ. Proc. 2162.

[44] Petitioner's subsequent filings are thus ineligible to toll the statute of limitations as they were filed after the limitations period expired.

[45] Furthermore, there appears no basis upon which this court could find that the one-year limitations is equitably tolled. In *Davis v. Johnson*, the Fifth Circuit Court of Appeals held that the one-year filing limitation, like all limitation statutes, may be equitably tolled. *See* 158 F.3d 806, 811 (5th Cir. 1998) ("A plain reading of the language of § 2244, which contains the AEDPA limitations period, leads to the conclusion that Congress intended that the limitations period be interpreted as a statute of limitations."). "Dismissal of a first habeas petition is a particularly serious matter, for that dismissal denies the petitioner the protections of the Great Writ entirely, risking injury to an important interest in human liberty." *Lonchar v. Thomas*, 517 U.S. 314, 324 (1996) *quoted in Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999). A court may allow an untimely petition to proceed under the equitable tolling doctrine in "extraordinary circumstances." *Davis*, 158 F.3d at 810. The Fifth Circuit has held that extraordinary circumstances exist "where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (quoting *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)). The evidence must show that the petitioner, though deterred by matters outside his control, was nevertheless *diligent in his pursuit of § 2254 relief. See id.* at 403 (emphasis added). This court, therefore, determines whether the facts of petitioner's case present sufficiently "rare and exceptional circumstances" to justify equitable tolling. *Fisher*, 174 F.3d at 713 (quoting *Davis*, 158 F.3d at 810). Such a determination is discretionary. *See Cousin v. Lensing*, 310 F.3d 843, 847-48 (5th Cir. 2002).

Petitioner's actions in this case cannot be characterized as diligent pursuit of § 2254 relief. He waited nearly three years after his conviction became final before bringing a post-conviction

Accordingly;

## RECOMMENDATION[46]

For the foregoing reasons, it is hereby **RECOMMENDED** that the petition for writ of habeas corpus filed by **DAMON STACK** be **DENIED WITH PREJUDICE as UNTIMELY.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within ten (10) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 30th day of March, 2006.

*[signature]*
LOUIS MOORE, JR.
United States Magistrate Judge

---

challenge in the state courts. Further, petitioner does not present to this court evidence that he either was actively mislead by the respondent concerning his cause of action or otherwise prevented in some extraordinary circumstance from asserting his rights. No such circumstances appear in the record. Thus, petitioner is not entitled to relief under the doctrine of equitable tolling.

[46]The court wishes to recognize T. Goulde, a third year law student at Tulane University Law School, who assisted in the research and preparation of this Report and Recommendation.